THE STATE *ex rel.* ROBINSON, *Prosecuting Attorney,* v. TOWN OF COLUMBIA *et al., Appellants.*

Division One, July 2, 1892.

1. **Constitution:** TAXATION: MUNICIPAL LEVY: WATERWORKS AND ELECTRIC LIGHTS. Under the limitations on taxation (Constitution, art. 10, secs. 11, 12), a town of less than ten thousand and more than one thousand inhabitants cannot by a two-thirds vote issue bonds and levy a tax exceeding fifty cents on the $100 valuation for the purpose of constructing waterworks and an electric-light house.

2. ———: ———. Section 12, article 10, of the constitution does not confer the power to levy a tax in excess of the maximum rates specified in section 11.

3. ———: ———: INJUNCTION. The collection of such unconstitutional tax may be enjoined by a suit on behalf of the state at the relation of the prosecuting attorney.

The State ex rel. Robinson v. Town of Columbia.

*Appeal from Audrain Circuit Court.*—Hon. E. M. Hughes, Judge.

Affirmed.

*Alexander Martin, Lewis M. Switzler* and *C. B. Sebastian* for appellants.

(1) The town has authority to own and operate works necessary to supply it with water. Revised Statutes, 1889, sec. 1672. If there was no reference to water in said statute the express authority providing for the "improvement" of the town would justify an improvement for furnishing it with pure and wholesome water. See as bearing on the question here involved: *Waterworks v. Atlantic City,* 39 N. J. Eq. 367; *City of Brenham v. Water Co.,* 4 S. W. Rep. 143; *Gas Co. v. Parkersburgh,* 30 W. Va. 435; *Gaslight Co. v. Saginaw,* 28 Fed. Rep. 535; *Garrison v. Chicago,* 7 Biss. 480. (2) While the injunction as granted does not rest on the ground that the town will unlawfully furnish the inhabitants as distinguished from the city with water, yet such furnishing to the inhabitants would be lawful and proper under the authority in the charter "to supply the town with water." *Waterworks v. Atlantic City,* 39 N. J. Eq. 367; *Dayton v. Quigley,* 29 N. J. Eq. 77; *Hale v. Hougton,* 8 Mich. 457; *Smith v. Mayor,* 88 Tenn. 464; *In re Water Co.,* 66 N. Y. 413. (3) The express power in the charter "to provide for the lighting of the streets and erecting lamps" confers the power to light by electricity, although there is no evidence in the record they have done or threatened to do anything of the kind. *Village of Carthage v. Frederick,* 112 N. Y. 268; *Crawfordsville v. Braden,* 28 N. E. Rep. 849; *Putnam v. Grand Rapids,* 58 Mich. 417; *Gas Co. v. Parkersburgh,* 30 W. Va. 435; *Mandlin v. Greenville,*

11 S. E. Rep. 434. (4) The town has the power to contract the indebtedness of $45,000 mentioned in the ordinance and levy and collect the tax necessary to pay it, although said tax will be in excess of the supposed constitutional limit of fifty cents on the $100 valuation. *First.* A consideration of the objection made to the tax exceeding the constitutional limitation requires a consideration of sections 11 and 12 of article 10 of the constitution. It must be clear that section 11 fell far short of the necessary restraints on taxation, etc., known and prevailing in other states at the time our convention was in session. It is natural that they should have sought to place restraints beyond which all municipal corporations could not go, even with a two-thirds vote. Accordingly, we find the twelfth section relating to limits on the power to incur liabilities, which has been lifted from other constitutions and placed in our own with slight modifications. *Second.* It must be admitted that the convention had some object in view not provided for in section 11. This is the *prima facie* import of the act of adding another section, though perhaps not conclusive, because one section of a statute or constitution may in its language be the repetition of one already there. Such, however, cannot be the case in respect to section 12, which operates on indebtedness, and not on taxes, and prescribes extended limits in excess of the limits in section 11. *Third.* It provides that no county, city, town or school district shall be allowed by the legislature to become indebted for any purpose in an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters. Of course the legislature can allow it to exceed that limit upon the condition of the assent of the voters aforesaid. If nothing more had been added there would have been no limit to the excess over the income

and revenue. *Fourth*. The next clause provides for a limit to the excess even with the assent of the voters. It declares that they shall not be allowed to become indebted in an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein to be ascertained by the previous assessment. This would seem to be the extreme limit of indebtedness prescribed for all these municipal corporations upon the assent of the voters, if there was no exception made to it. Towns would thus come in and have the right of incurring indebtedness to this limit, for all purposes for which they are authorized by the legislature to contract debts. *Fifth*. An exception is added to this five-per-cent. limitation, applying to counties only, for the sole purpose of erecting a courthouse or jail. With such assent of the voters no limitation upon them is imposed in incurring debts for such purpose—courthouse or jail; the five-per-cent. limitation with vote may be exceeded. *Sixth*. There is, however, another condition—not exactly a limitation—which requires all municipal corporations incurring debts in excess of their income and revenue, with assent of the voters, to provide for the collection of an annual tax sufficient to pay the interest on the indebtedness as it falls due and to constitute a sinking fund for payment of the principal in twenty years. It is apparent that much is accomplished in the way of restraints in section 12, which is wanting in section 11; section 12 fixes a limit on all indebtedness and consequently on all taxation to pay it, beyond which no debt can be incurred by vote of the people and for which no tax can be levied. The only exception is in favor of counties building courthouses and jails. As to them for such objects alone no limit of indebtedness is fixed, and consequently no limit of taxation. Their only protection is in the good sense of the voters. In section

11 the limit of taxation upon a two-thirds vote was unrestricted as to all public buildings not courthouses and jails alone. Thus we see that, unless the legislature can permit towns to increase their taxation on a two-thirds vote, they will be restrained to the ordinary tax levied without vote, and will be deprived of the right to raise the revenue necessary for improvements. *Seventh.* Laws providing for extraordinary and special taxation enlarge the right of taxation as declared in the laws for general and ordinary taxation without any express language of amendment or modification. *Conner v. Co.*, 40 Pa. 348; *Quincy v. Jackson*, 113 U. S. 332; *State v. Macon Co.*, 99 U. S. 582. *Eighth.* There is nothing whatever in the case of *Barnard & Co. v. Knox Co.*, 105 Mo. 382. In that case a debt for $83.90 for stationery against a county had been incurred. As it was in excess of the income and revenue of the year it was held to be void. In passing upon it the court remarked that ''as to counties the only exception is that with the assent of the voters the expenditures may be increased for the erection of a courthouse or jail.'' As to towns in respect of which the increase is not limited to any purpose, the court says nothing, and the case furnishes no authority, unless it is by inference, that as the increase in towns is not restricted to any particular purpose it must be legal for all municipal purposes within the five-per-cent. limit on a two-thirds vote. Where a case like this is brought by the prosecuting attorney, not in good faith in behalf of the state, but in behalf of private interests represented by the gas company and its officers, agents and stockholders, equity will not grant the relief sought. Kerr on Injunctions, secs. 335, 549; *Putney v. Lynne, etc.*, 13 W. R. 983; High on Extraordinary Legal Remedies, sec. 652; Dillon on Municipal Corporations, 899;

*People v. Railroad*, 88 Ill. 537; *State v. Wood*, 13 Mo. App. 144; s. c., 84 Mo. 378.

*J. deW. Robinson, Odon Guitar, Squire Turner* and *Wellington Gordon* for respondent.

(1) Proceedings were properly instituted in the name of the state. The "false and impertinent issue" attempted to be injected into the case was designed simply to divert attention and excite prejudice. *State v. Saline Co.*, 51 Mo. 350; *State v. Callaway Co.*, 51 Mo. 395; *State v. Curators*, 57 Mo. 178; Dillon on Municipal Corporations, secs. 735, 736. (2) Under the constitution the legislature has no power to authorize a municipal corporation to create debts or levy taxes except for "corporate and public purposes only." Constitution, art. 10, secs. 1, 3, 10. The vending of water and light to the inhabitants of a town for domestic and business purposes is a "private enterprise," without the scope and purpose for which municipal corporations were instituted. To tax private property to establish and carry on such enterprises, is an illegal and unwarranted exercise of the "taxing power" under the limitations of our present constitution. (3) The power of counties, cities and towns to incur indebtedness is limited and defined as to rate, purpose and amount in sections 11 and 12 of article 10, constitution. The rate prescribed cannot be exceeded for any purposes other than those specifically designated and excepted, viz., "in school districts formed of cities and towns for school purposes," and "in counties, cities or school districts, for the purpose of erecting public buildings," to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness, and in counties, for the erection of a courthouse or jail." Outside of the exceptions named, the rate of taxation

prescribed cannot be increased for any purpose whatever, either with or without the assent of the taxpayers or qualified voters of such counties, cities or towns. In the language of the eleventh section, "said restrictions as to rates shall apply to taxes of every kind and description, whether general or special," thus closing the doors against implication or doubt. The twelfth section in no way qualifies the eleventh (which is complete in itself), but adds to it other limitations and conditions, and the single exception, already mentioned, authorizing an increase of indebtedness of counties "to erect a courthouse and jail." *Barnard & Co. v. Knox Co.*, 105 Mo. 382; *Book v. Earl*, 87 Mo. 246; *Arnold v. Hawkins*, 95 Mo. 569; *Black v. McGonigle*, 103 Mo. 142; *State ex rel. v. Railroad*, 74 Mo. 163; *State ex rel. v. Court*, 68 Mo. 35; *St. Joseph Board v. Buckland*, 62 Mo. 444; *State ex rel. v. Shortridge*, 56 Mo. 129; *Brannon v. Court*, 33 W. Va. 789; *Spilman v. Parkersburgh*, 14 S. E. Rep. 279; *Wright v. Railroad*, 120 Ill. 541; *Railroad v. McCleave*, 108 Ill. 369; *Prince v. City of Quincy*, 128 Ill. 443. (4) The charter confers no authority on the town of Columbia to light its streets, etc., by electricity.

BLACK, J.—This is a suit in the name of the state at the relation of the prosecuting attorney of Boone county against the town of Columbia and the trustees thereof to enjoin the issuing and sale of certain bonds. The suit was commenced in the Boone county circuit court on the third of January, 1891. The Audrain circuit court, to which the cause was transferred by change of venue, granted a perpetual injunction as prayed for, and the case is here on the defendant's appeal.

Columbia is a municipal corporation governed by the general law relating to towns and villages. On the

twenty-eighth of October, 1890, the trustees passed an ordinance, the first section of which is as follows:

"Sec. 1. Whereas it is provided by the constitution of the state of Missouri that the annual tax rate on property in towns having less than ten thousand and more than one thousand inhabitants shall not exceed fifty cents on the $100 valuation on taxable property in said towns; that no municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose, the town of Columbia coming within the purview of the above provisions; and whereas it is proposed by the board of trustees of said town, on behalf of the inhabitants thereof, to bind said town to an increase of the indebtedness of said town in excess of the annual income and revenue thereof, and above the constitutional limit of taxation thereon, said increase of indebtedness not to exceed the sum of $45,000, said amount, or so much thereof as said board shall deem necessary, to be expended in the purchase, location and establishment of a combined waterworks and electric-light plant, to be owned and operated by said town, and in the purchase or lease of necessary grounds therefor, for the purpose of supplying the said town with water and the streets and thoroughfares thereof with lighting by electricity. Now, therefore, with a view to test the sense of the legal voters of said town of Columbia on the increase of indebtedness as aforesaid, for the objects and purposes hereinbefore specified, a special election is hereby ordered to be held at the courthouse in said town on Tuesday, November 18, 1890, for said purpose."

The proposition was approved by more than two-thirds of the voters. On the ninth of December, 1890,

the trustees adopted another ordinance, whereby they directed bonds to be issued to the amount of $45,000, due in twenty years, and bearing interest at the rate of five per cent. per annum, payable semi-annually. This ordinance provides for an annual tax equal to one-twentieth part of the principal, to create a sinking fund, and for a further annual tax sufficient to pay the accruing interest.

The town has a population of more than one thousand and less than ten thousand inhabitants. The value of the taxable property was $1,264,286, on the first of June, 1890, as shown by the county assessor's books, made out for the year 1891. For five years an annual tax of fifty cents on the $100 valuation has been levied and collected to defray the current expenses. An additional annual tax of at least thirty-seven and one-half cents on the $100 will be required to meet these bonds if issued under the before-mentioned ordinances.

It is earnestly insisted, on the part of the plaintiff, that the powers given by the statute to a town "to borrow money for the improvement of such town, or to supply the same with water or gas," and "to provide for lighting the streets and erecting lamps thereon," do not include the right to furnish the inhabitants with water and light for domestic use. There is nothing in the ordinance to show that the town proposes to sell electricity to the inhabitants. It is, however, doubtless the intention to furnish water to the inhabitants for domestic use. For all the purposes of this case it will be assumed that the town has the power to build and own waterworks and to furnish the inhabitants with water, and that it has the power to own and operate a plant for the purpose of lighting the streets and other public places with electricity. Behind all this is the far more important question

whether the town can incur the indebtedness of $45,000 to be paid by a tax over and above the fifty cents on the $100 valuation; for that is what the trustees propose to do.

Section 1947, Revised Statutes, 1889, provides that towns and villages may contract debts in excess of the annual income and revenue for any year, for any purpose authorized by the charter of such town or any general law, upon the assent of two-thirds of the legal voters voting at an election held for that purpose; *provided* such indebtedness, so to be contracted, shall not, with the existing indebtedness, exceed in the aggregate five per centum of the value of the taxable property therein.

Under this statute Columbia would have a right to create an indebtedness to the aggregate amount of five per cent. of the taxable property therein. It is conceded that the indebtedness, including the proposed bonds, does not quite reach the limit. The town, therefore, has the power to create the debt in question, and to levy and collect a tax to pay the same over and above the fifty cents on the $100 valuation, unless restrained from so doing by the constitution; and this brings us to the vital question in this case. The restrictions, if any there are, are to be found in the following sections, being 11 and 12 of article 10 of the constitution of 1875:

"Sec. 11.   Taxes for county, city, town and school purposes may be levied on all subjects and objects of taxation; but the valuation of property therefor shall not exceed the valuation of the same property in such town, city or school district for state and county purposes.   For county purposes, the annual rate on property in counties having $6,000,000 or less shall not, in the aggregate, exceed fifty cents on the $100 valuation; in counties having $6,000,000 and under $10,000,000,

The State ex rel. Robinson v. Town of Columbia.

said rate shall not exceed forty cents on the $100; in counties having $10,000,000 and under $30,000,000, said rate shall not exceed fifty cents on the $100 valuation; and, in counties having $30,000,000 or more, said rate shall not exceed thirty-five cents on the $100 valuation. For city and town purposes the annual rate on property in cities and towns having thirty thousand inhabitants or more shall not, in the aggregate, exceed one hundred cents on the $100 valuation; in cities and towns having less than thirty thousand and over ten thousand inhabitants, said rate shall not exceed sixty cents on the $100 valuation; in cities and towns having less than ten thousand and more than one thousand inhabitants, said rate shall not exceed fifty cents on the $100 valuation; in towns having one thousand inhabitants or less, said rate shall not exceed twenty-five cents on the $100 valuation. For school purposes in districts the annual rate on property shall not exceed forty cents on the $100 valuation; provided the aforesaid annual rate for school purposes may be increased, in districts formed of cities and towns, to an amount not to exceed $1 on the $100 valuation, and in other districts to an amount not to exceed sixty-five cents on the $100 valuation, on the condition that a majority of the voters who are taxpayers, voting at an election held to decide the question, vote for said increase. For the purpose of erecting public buildings in counties, cities or school districts, the rates of taxation herein limited may be increased when the rate of such increase, and the purpose for which it is intended, shall have been submitted to a vote of the people, and two-thirds of the qualified voters of such county, city or school district, voting at such election, shall vote therefor. The rate herein allowed to such county shall be ascertained by the amount of taxable property therein, according to the last assessment for state and county

purposes, and the rate allowed to each city or town by the number of inhabitants, according to the last census taken under the authority of the state, or of the United States; said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing, or bonds which may be issued in renewal of such indebtedness.

"Sec. 12. No county, city, town, township, school district or other political corporation or subdivision of the state shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; nor in any cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment next before the last assessment for state and county purposes previous to the incurring of such indebtedness; *provided*, that, with such assent, any county may be allowed to become indebted to a larger amount for the erection of a courthouse or jail. And provided, further, that any county, city, town, townshp, school district or other political corporation or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same."

It is to be observed in the first place that these sections limit taxation in two ways. Section 11 fixes a maximum annual rate, while section 12 places a limit to the amount of indebtedness that may be incurred. By section 11 the maximum annual rate is graded according to the valuation of taxable property for county and for school purposes; but for city and town purposes it is graded according to population. This section asserts in positive terms that, in cities and towns having less than ten thousand and more than one thousand inhabitants, the annual rate of taxation shall not exceed fifty cents on the $100, and Columbia belongs to this class. The same section makes some exceptions. The first relates to a general school tax, and has nothing to do with the present case. The second exception provides that the rates before specified may be increased by a two-thirds vote for the purpose of erecting public buildings in counties, cities and school districts. Towns, it will be seen, are not mentioned in this exception. This exception can have no application to the case in hand for the further reason that the proposed debt is not one created for the purpose of erecting public buildings. None of the exceptions in this section aid the defendants in this case, so that the maximum rate still stands at fifty cents. But this section is still more emphatic. The last clause says: "Said restrictions as to rates shall apply to all taxes of every kind and description, whether general or special." The tax which the trustees propose to levy to pay the interest on these bonds and to create a sinking fund is a special tax within the meaning of the clause of section 11 just quoted. It is, therefore, perfectly clear that the annual tax to pay current expenses and to pay the interest on these bonds and to create a sinking fund cannot exceed, in the aggregate, fifty cents on the $100 valuation. Now the ordinances in this case contemplate

and, indeed, provide that this debt, evidenced by the bonds, shall be paid by a tax additional to the levy of fifty cents on the $100 valuation. To the fifty-cent tax it is proposed to add an interest tax and a sinking-fund tax to pay the bonds, amounting to an annual levy of at least thirty-seven and one-half cents on the $100. As this additional tax is in excess of the constitutional limit it will be illegal, and its collection may be enjoined. *Book v. Earl,* 87 Mo. 246; *Arnold v. Hawkins,* 95 Mo. 569; *Black v. McGonigle,* 103 Mo. 192.

Nor is there anything in section 12 which modifies the result just stated. That section declares: "No county, city or town * * * shall be allowed to become indebted in any manner for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters," etc.

The income and revenue provided for a particular year depends, of course, upon the rate of the levy for that year, and this section does not undertake to give a county, city or town the power to levy a tax in excess of the maximum rates, so far as they are specified in section 11. When a county, city or town has levied the highest rate allowed by section 11, it can levy no further or additional tax, except that in counties, cities and school districts the rates may be increased with the prescribed vote for the purpose of erecting public buildings, as to which no maximum annual rate is fixed by section 11. *Barnard & Co. v. Knox Co.,* 105 Mo. 382. But even in such cases the aggregate amount of indebtedness must not exceed five per centum of the value of the taxable property. To this there is the exception in favor of the county as to debts incurred for the erection of a courthouse or jail. The exceptions as to annual rates mentioned in section 11 do not apply to towns, unless we construe the words,

"for the purpose of erecting public buildings in counties, cities and school districts," as including towns, and if we do not give them that construction still the words "public buildings" do not include waterworks.

These two sections relate to the same subject, are consistent with each other, and they must be construed together. They deny to towns like Columbia the power to levy a tax exceeding fifty cents on the $100 valuation for any such purpose as that contemplated by the ordinances in question. As before stated, the tax to pay current expenses and to pay this proposed waterworks and electric-light plant debt must not, in the aggregate, exceed fifty cents on the $100 valuation. The town has no right or power to increase its tax levy beyond that amount for the purpose of building waterworks or lighting the streets and highways. Perhaps the town could pay these bonds out of the fifty-cent tax and the revenue derived from the waterworks, but that fact does not, nor is it claimed that it can, aid the defendants; for the ordinances in question provide for a tax to pay the bonds over and above the fifty-cent annual tax. The town has no power to levy or collect such a tax.

Although the entire indebtedness of the town, including these proposed bonds, does not reach five per cent. of the value of the taxable property, still it is proposed to levy a tax exceeding fifty cents on the $100. One constitutional limitation is just as binding as the other. The town will not be allowed to violate either. Whether the bonds, if issued and sold, could or would be held payable out of the fifty-cent tax, and, therefore, valid, is a question not discussed in the briefs nor considered by this court, The bonds should not be issued, under the ordinances in question, because the ordinances provide for their payment by a tax which the constitution says the town cannot levy.

There is a charge in the answer that this suit was not instituted in good faith by the prosecuting attorney. It is useless to go into the details of this defense. It is sufficient to say that in our opinion the charge is not supported by the evidence. The judgment is affirmed. All concur.